**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Laura Maria GUEVARA PERUANO )<br><br>        Petitioner,              )<br><br>v.                            )<br><br>David WESLING, Field Office Director, )<br>TODD LYONS, Acting Director U.S. )<br>Immigrations and Customs Enforcement, )<br>and KRISTI NOEM, U.S. Secretary )<br>of Homeland Security,         )<br><br>        Respondents.           ) | Case No. 1:26-cv-10300<br><br>**EMERGENCY PETITION FOR**<br>**WRIT OF HABEAS CORPUS**<br><br>Agency Number: 240-274-366 |

## INTRODUCTION

1. Petitioner Laura Maria Guevara Peruano ("Petitioner" or "Ms. Guevara Peruano") has been detained by the Department of Homeland Security ("DHS") since August 2025.

2. Ms. Guevara Peruano is a native and citizen of Ecuador. She entered the United States over three years ago around September 2022. From August 2025 until approximately January 22, 2026, Ms. Guevara Peruano was in the custody of U.S. Immigration and Customs Enforcement ("ICE") at the Cumberland County Jail ("CCJ"), in Portland, Maine.

3. Ms. Guevara Peruano has had limited contact with the criminal justice system. At present, she has two unresolved criminal matters. Both criminal matters' resolutions are delayed given her ICE detention.

1

4. On January 12, 2026, Ms. Guevara Peruano was granted Withholding of Removal based on suffering past persecution on account of her per se political opinion. She is currently within the appellate period, which expires on February 11, 2026. Ms. Guevara Peruano intends to work with her immigration attorney to exercise her right to appeal.

5. On January 22, 2026, upon information and belief, Ms. Guevara Peruano was taken by federal agents from CCJ. No advance notice was given to Ms. Guevara Peruano or her attorney, Ms. Lia Newman.

6. Upon information and belief, Ms. Guevara is currently being held at ICE Boston Field Office in Burlington, Massachusetts.

7. Upon information and belief, Ms. Guevara Peruano has been kept at the Boston Field Office since her unexplained transfer on January 22, 2026, despite that the Field Office is a temporary holding facility that is not intended to hold detainees for more than 12 hours. There is no bed or bedding or appropriate hygiene facilities for detainees. The food is inadequate and access to counsel is restricted. *See, e.g.,* Miriam Wasser (WBUR), *Inside the Burlington office ICE has used to detain immigrants* (WBUR July 18, 2025), publicly available at https://www.wbur.org/news/2025/07/18/massachusetts-immigration-ice-burlington-field-office-unsanitary-conditions-diaz-martinez.

8. The conditions of Mr. Guevara Peruano confinement are unlawful. Upon information and belief, Ms. Guevara is in a crowded holding cell with no bed or bedding, no personal hygiene facilities, no access to a shower, and she is not being provided medication for ongoing medical conditions.

9. The conditions for overnight detention at the ICE/ERO Field Office do not meet basic standards for prison conditions sufficient to satisfy the Fifth Amendment.

10.     Ms. Guevara Peruano has severe medical needs – that, absent proper medical attention can have permanent consequences on her short- and long-term health. Ms. Guevara Peruano suffers from epilepsy. Ms. Guevara Peruano experiences approximately 2-3 seizures a day. While in ICE custody, this pattern has continued. In the past, when left untreated, Ms. Guevara Peruano has lost consciousness and been so severely disabled that she is unable to speak, walk, feed herself, or care for herself.  She was so severely impacted by this medical incident that she is considered 80% disabled by the Ecuadoran government.

11.     **Upon information and belief, due to the conditions for detention at the ICE/ERO Field Office, Ms. Guevara Peruano is not being provided with medication for her ongoing medical conditions.**

**12.**     Ms. Guevara Peruano requires specific disability-related housing accommodations while in ICE custody. For instance, she must be on the first floor and bottom bunk of all holding facilities. Upon information and belief, **the conditions for overnight detention at the ICE/ERO Field Office do not satisfactorily meet the medical accommodations this Petitioner requires.**

13.     Moreover, Ms. Guevara Peruano has cognitive limitations caused by numerous traumatic brain injuries resulting from untreated epilepsy and chronic physical abuse from her parents (as a child) and intimate partners (as an adult). Ms. Guevara Peruano has also been diagnosed with Post Traumatic Stress Disorder ("PTSD"). **Given her medical needs, Ms. Guevara Peruano requires and has been granted disability-related accommodation before the Immigration Court so that she can fully access Due Process and meaningfully engage with her attorney.**

14.     Further, on information and belief, the Department of Homeland Security ("DHS") has alleged or will allege that Ms. Guevarra Peruano was not previously admitted or paroled into

the United States and is subject to mandatory detention without a bond hearing by an Immigration Judge.

15.   **Ms. Guevara Peruano requests immediate release pending the adjudication of this Petition.**

<u>**REQUIREMENTS OF 28 U.S.C. § 2243 FOR PROMPT PROCESS**</u>

16.   A court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the court must require respondents to file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id*. (emphasis added).

<u>**LEGAL FRAMEWORK**</u>

17.   There are two provisions that govern the detention of noncitizens in removal proceedings: 8 U.S.C. §§ 1225 and 1226. On September 5, 2025, in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), the Board of Immigration Appeals issued a decision that purports to require the Immigration Court to unlawfully deny a bond hearing to all persons such as Ms. Guevarra Peruano. The *Yajure Hurtado* decision represents a dramatic change in long-standing agency interpretation and application of the Immigration and Nationality Act. *See Guerrero Orellana v. Moniz*, --- F. Supp. 3d. ---, 2025 WL 3687757, at *2 (D. Mass. 2025) (*Guerrero Orellana III*). Because of this change in agency interpretation, any noncitizen who entered "without inspection" is alleged to be detained pursuant to 8 U.S.C. § 1225(b)(2). *See id.* ("The Seventh Circuit and most district courts to have addressed the issue have rejected the government's new, more expansive interpretation of § 1225(b)(2)(A)").

18.   On October 30, 2025, this Court certified the following class:

All people who are arrested or detained in Massachusetts, or are detained in a geographical area over which, as of September 22, 2025, an Immigration Court located in Massachusetts is the administrative control court, or who are otherwise subject to the jurisdiction of an Immigration Court located in Massachusetts, where:

(a) the person is not in any Expedited Removal process under 8 U.S.C. § 1225(b)(1), does not have an Expedited Removal order under 8 U.S.C. § 1225(b)(1), and is not currently in proceedings before an immigration judge due to having been found to have a credible fear of persecution under 8 U.S.C. § 1225(b)(1)(B)(ii);

(b) for the person's most recent entry into the United States, the government has not alleged that the person was admitted into the United States and has not alleged that person was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) at the time of entry "or after continuous detention upon arrival"[1];

(c) the person does not meet the criteria for mandatory detention pursuant to 8 U.S.C. § 1226(c);

(d) the person is not subject to post-final order detention under 8 U.S.C. § 1231; and

(e) the person is not a person whose most recent arrest occurred at the border while they were arriving in the United States and has been continuously detained thereafter.

*Guerrero Orellana v. Moniz*, --- F. Supp. 3d. ---, 2025 WL 3033769 (D. Mass. 2025) (*Guerrero Orellana II*). The parties filed cross-motions for partial summary judgment on the class.

19.    Two months later, this Court denied the government's motion, rejected the Board of Immigration Appeal's decision in *Yajure Hurtado*, and found that "8 U.S.C. § 1225(b)(2)(A) does not authorize the mandatory detention of the class members without a bond hearing." *Guerrero Orellana III*, --- F. Supp. 3d. ---, 2025 WL 3687757, at *2.

---

[1] The modification "or after continuous detention upon arrival" was added in *Guerrero Orellana III*. *See Guerrero Orellana III*, 2025 WL 3687757, at *7.

20.     The District Court issued class-wide declaratory judgment, that "the class members are subject to discretionary detention under § 1226(a), not mandatory detention under § 1225(b)(2)(A), and that they are entitled to an initial custody determination by an immigration officer and, upon request, a custody redetermination (i.e., bond) hearing before an immigration judge." *Guerrero Orellana III*, 2025 WL 3687757, at *7.

21.     Ms. Guevara Peruano is a member of the *Guerrero Orellana* class.

22.     Ms. Guevara Peruano cannot be subject to mandatory detention under 8 U.S.C. § 1225(b)(1) because Ms. Guevara Peruano does not meet the criteria for Expedited Removal.  *See Make the Road New York v. Noem*, No. 25-190, 2025 WL 2494908, at *23 (D.D.C. Aug. 29, 2025).

23.     Ms. Guevara Peruano cannot be subject to mandatory detention under 8 U.S.C. § 1225(b)(2), including because, as a person already present in the United States, she is not currently "seeking admission" to the United States.  *See Romero v. Hyde*, __ F.3d __, No. 25-11631, 2025 WL 2403827, at *1, 8-13 (D. Mass. Aug. 19, 2025) (Murphy, J.).

24.     Ms. Guevara Peruano was not, at the time of arrest, paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A), and therefore Ms. Guevara Peruano cannot be "returned" under that provision to mandatory custody under 8 U.S.C. § 1225(b) or any other form of custody. Ms. Guevara Peruano is not subject to mandatory detention under § 1225 for this reason as well.

25.     Instead, as a person arrested inside the United States and held in civil immigration detention, Ms. Guevara Peruano is subject to detention, if at all, pursuant to 8 U.S.C. § 1226. *See Guerrero Orellana II*; *Romero*, 2025 WL 2403827, at *1, 8-13 (collecting cases).

26.     Ms. Guevara Peruano is not lawfully subject to mandatory detention under 8 U.S.C. § 1226(c), including because she has not been convicted of any crime that triggers such detention.

*See Demore v. Kim*, 538 U.S. 510, 513-14, 531 (2003) (allowing mandatory detention under § 1226(c) for brief detention of persons convicted of certain crimes and who concede removability).

27.    Accordingly, Ms. Guevara Peruano is subject to detention, if at all, under 8 U.S.C. § 1226(a).

28.    As a person detained under 8 U.S.C. § 1226(a), Ms. Guevara Peruano must, upon her request, receive a custody redetermination hearing (colloquially called a "bond hearing") with strong procedural protections. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021); *Doe v. Tompkins*, 11 F.4th 1, 2 (1st Cir. 2021); *Brito v. Garland*, 22 F.4th 240, 256-57 (1st Cir. 2021) (affirming class-wide declaratory judgment); 8 C.F.R. 236.1(d) & 1003.19(a)-(f).

29.    Upon information and belief, Immigration Judges have been instructed to not follow *Guerrero Orellana III* because they assert that it is not binding. Instead, they have continued to apply the Board of Immigration Appeal's decision in *Yajure Hurtado* to class members, despite the declaratory judgment in *Guerrero Orellana III*.

30.    Ms. Guevara Peruano is being irreparably harmed by her ongoing unlawful detention without a bond hearing. *See Romero*, 2025 WL 2403827, at *6-8 (no exhaustion required because "[o]bviously, the loss of liberty is a . . . severe form of irreparable injury" (internal quotation marks omitted)); *Flores Powell v. Chadbourne*, 677 F. Supp. 2d 455, 463 (D. Mass. 2010) (declining to require administrative exhaustion, including because "[a] loss of liberty may be an irreparable harm"); *cf. Brito v. Garland*, 22 F.4th 240, 256 (1st Cir. 2021) (citing *Bois v. Marsh*, 801 F.2d 462 468 (D.C. Cir. 1986), for proposition that "'[e]xhaustion might not be required if [the petitioner] were challenging his incarceration . . . or the ongoing deprivation of some other liberty interest'").

31.     Moreover, the Immigration Court lacks jurisdiction to adjudicate the constitutional claims raised by Ms. Guevara Peruano and any attempt to raise such claims would be futile. *See Flores-Powell*, 677 F. Supp. 2d at 463 (holding "exhaustion is excused by the BIA's lack of authority to adjudicate constitutional questions and its prior interpretation" of the relevant statute).

32.     There is no statutory requirement for Ms. Guevara Peruano to exhaust administrative remedies. *See Gomes v. Hyde*, No. 25-11571, 2025 WL 1869299, at *4 (D. Mass. July 7, 2025) ("[E]xhaustion is not require by statute in this context."); *Romero,* 2025 WL 2403827, at *6-8.

33.     Accordingly, there is no requirement for Petitioner to further exhaust administrative remedies before pursuing this Petition. *See Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, (1st Cir. 1997) (explaining that, where statutory exhaustion is not required, administrative exhaustion not required in situations of irreparable harm, futility, or predetermined outcome).

34.     Based on these well-established principles, this Court has specifically rejected the argument that exhaustion is required in a detained noncitizen's challenge to the BIA's decision in *Matter of Yajure Hurtado, supra*:

> a court may hear unexhausted claims in circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion." *Flores Powell v. Chadbourne*, 677 F.Supp.2d 455,463 (D. Mass. 2010) (cleaned up). Such a circumstance "exists when substantial doubt exists about whether the agency is empowered to grant meaningful redress" as well as "when the potential decisionmaker ... can be shown to have predetermined the issue". *Id.*

*Inlago Tocagon v. Moniz,* 2025 WL 2778023, at *2 (D. Mass. Sept. 29, 2025).

**<u>JURISDICTION AND VENUE</u>**

35.     This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus) and 28 U.S.C. § 1331 (federal question).

36.     Venue is proper because Ms. Guevara Peruano is being held in Burlington, Massachusetts which is in this District. Venue is also proper in this District because Respondents are officers and employees of the United States, a substantial part of the events or omissions giving rise to his claims occurred here, and no real property is at issue. 28 U.S.C. § 1391(e).

## PARTIES

37.     Petitioner is a citizen of Ecuador. Upon information and belief, she is currently detained at ICE Boston Field Office in Burlington, Massachusetts. Upon information and belief, she entered the United States without inspection in approximately 2022. Ms. Guevara Peruano has a limited criminal history that has not resulted in any conviction nor render her mandatorily detained.

38.     Respondent David T. Wesling is the Acting New England Field Office Director for ICE. He is a legal and physical custodian of Ms. Guevara Peruano and is named in his official capacity.

39.     Respondent Todd Lyons is the Acting Director of ICE. He is a legal custodian of Ms. Guevara Peruano is named in his official capacity.

40.     Respondent Kristi Noem is the U.S. Secretary of Homeland Security. She is a legal custodian of Ms. Guevara Peruano and is named in her official capacity.

## CLAIMS FOR RELIEF

### COUNT ONE
**Violation of the Fifth Amendment**
**(Based Upon Inhumane Conditions of Confinement)**

41.     Ms. Guevara Peruano incorporates by reference the allegations of fact set forth in the preceding paragraphs.

42.     The ICE/ERO Boston Field Office is a temporary holding facility. It is not intended

to house overnight detainees. It does not provide beds or bedding to detainees, suitable personal hygiene facilities, sufficient food, comfortable indoor temperatures, or unrestricted access to counsel. It intended to hold detainees for not more than 12 hours.

43. The conditions at the ICE/ERO Boston Field Office for overnight civil detainees constitute inhumane conditions of confinement.

44. Respondents' civil detention of Ms. Guevara Peruano at the ICE/ERO Boston Field Office violates the Fifth Amendment of the U.S. Constitution.

**COUNT TWO**
**Violation of 8 U.S.C. 1226(a) and Associated Regulations**

45. Ms. Guevara Peruano incorporates by reference the allegations of fact set forth in the preceding paragraphs.

46. Ms. Guevara Peruano may be detained, if at all, pursuant to 8 U.S.C. § 1226(a).

47. Under § 1226(a) and its associated regulations, Ms. Guevara Peruano is entitled to a bond hearing. *See* 8 C.F.R. 236.1(d) & 1003.19(a)-(f).

48. Ms. Guevara Peruano has not been, and will not be, provided with a bond hearing as required by law.

49. Ms. Guevara Peruano continuing detention is therefore unlawful.

**COUNT THREE**
**Violation of Fifth Amendment Right to Due Process**
**(Failure to Provide Bond Hearing Under 8 U.S.C. § 1226(a))**

50. Ms. Guevara Peruano incorporates by reference the allegations of fact set forth in the preceding paragraphs.

51. Because Ms. Guevara Peruano is a person arrested inside the United States and is subject to detention, if at all, under 8 U.S.C. § 1226(a), the Due Process Clause of the Fifth Amendment to the United States Constitution requires that Ms. Guevara Peruano receive a bond

hearing with strong procedural protections. *See Hernandez-Lara*, 10 F.4th at 41; *Doe*, 11 F.4th at 2; *Brito*, 22 F.4th at 256-57.

52.    Ms. Guevara Peruano has not been, and will not be, provided with a bond hearing as required by law.

53.    Several judges comprising the District Court for the District of Massachusetts have considered the applicability of 8 U.S.C. § 1226(a) (rather than Section 1225) in these circumstances, the right of a similarly situated detainee's right to receive a bond hearing, and the soundness of the BIA's position in *Matter of Yajure Hurtado.* These judges have all found Section 1226(a) to apply, concluded that access to a bond hearing was required, and, either expressly or implicitly, held the BIA's contrary view to be incorrect and unlawful. *See Rocha v. Hyde,* 2025 WL 2807692, at *2 (D. Mass. Oct. 2, 2025) (Burroughs, J.) ("[a]s Respondents acknowledge in their opposition, "[o]ther sessions of this court, as well as other courts across the country, have determined that 8 U.S.C. § 1226(a), and not 8 U.S.C. § 1225(b)(2), appl[ies] to aliens arrested and detained within the United States, even if such alien meets the definition of an applicant for admission as an alien present in the United States who has not been admitted"); *Mendoza v. Hyde*, C.A. No. 25-12815 (D. Mass. Oct. 1, 2025) (Kobick, J.) (not available in Westlaw) ("Mendoza is not an applicant for admission subject to mandatory detention under Section 1225(b). Noncitizens subject to detention under § 1226(a) have the right to request a bond hearing before an Immigration Judge, at which the government bears the burden to prove that continued detention is justified.") (internal quotation marks omitted); *Reynoso Tejada v. Moniz*, C.A. No. 25-12731 (D. Mass. Oct. 1, 2025) (Sorokin, J.) (not available in Westlaw) (granting habeas petition, including rejection of government's argument that petitioner was detained under § 1225); *De Sousa v. Hyde*, C.A. No. 25-12736 (Murphy, J.) (D. Mass. Oct. 1, 2025) (not available in Westlaw) (ordering that

"Petitioner receive a bond hearing under 8 U.S.C. s. 1226"); *Inlago Tocagon v. Moniz,* 2025 WL 2778023 (D. Mass. 2025) (Joun, J.); *Doe v. Moniz*, 2025 WL 2576819, at \*5) (D. Mass. 2025) (Talwani, J.); *Guerrero Orellana v. Moniz,* 2025 WL 2809996 (D. Mass. 2025) (Saris, J.); *Velasco-Luis v. Hyde*, C.A. No. 25-12747 (D. Mass. Oct. 6, 2025) (Stearns, J.) (not available in Westlaw) (adopting rationale of *Guerrero Orellana v. Moniz, supra)*.

54.     Nearly every court nationwide to have considered these issues has come to the same conclusions.  *See Guerrero Orellana v. Moniz, supra,* at \*5 (collecting cases).

55.     Ms. Guevara Peruano continuing detention is therefore unlawful.

## COUNT FOUR
### Violation of Fifth Amendment Right to Due Process
### (Failure to Provide an Individualized Hearing for Domestic Civil Detention)

56.     Ms. Guevara Peruano incorporates by reference the allegations of fact set forth in the preceding paragraphs.

57.     "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  *United States v. Salerno*, 481 U.S. 739, 755 (1987).

58.     The Fifth Amendment's Due Process Clause specifically forbids the Government to "deprive[]" any "person . . . of . . . liberty . . . without due process of law."  U.S. CONST. amend. V.

59.     "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law"); *cf. Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 139-40 (2020)

(holding noncitizens due process rights were limited where the person was not residing in the United States, but rather had been arrested 25 yards into U.S. territory, apparently moments after he crossed the border while he was still "on the threshold").

60.     "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas*, 533 U.S. 678 at (2001).

61.     The Supreme Court has thus "repeatedly recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection," including an individualized detention hearing.  *Addington v. Texas*, 441 U.S. 418, 425 (1979) (collecting cases); *see also Salerno*, 481 U.S. at 755 (requiring individualized hearing and strong procedural protections for detention of people charged with federal crimes); *Foucha v. Louisiana,* 504 U.S. 71, 81-83 (1992) (same for civil commitment for mental illness); *Kansas v. Hendricks,* 521 U.S. 346, 357 (1997) (same for commitment of sex offenders).

62.     Ms. Guevara Peruano was arrested inside the United States and is being held without being provided any individualized detention hearing.

63.     Ms. Guevara Peruano continuing detention is therefore unlawful, regardless of what statute might apply to purportedly authorize such detention.

### COUNT FIVE
### Violation of Fifth Amendment Right to Due Process
### (Substantive Due Process)

64.     Ms. Guevara Peruano incorporate by reference the allegations of fact set forth in the preceding paragraphs.

65.     Because Ms. Guevara Peruano are not being provided a bond hearing, the government is not taking any steps to effectuate its substantive obligation to ensure that

immigration detention bears a "reasonable relation" to the purposes of immigration detention (*i.e.*, the prevention of flight and danger to the community during the pendency of removal proceedings) and is not impermissibly punitive. *See Zadvydas*, 533 U.S. at 690; *Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring).

66.    Ms. Guevara Peruano detention is therefore unlawful regardless of what statute might apply to purportedly authorize such detention.

## PRAYER FOR RELIEF

Wherefore, Ms. Guevara Peruano respectfully request this Court to grant the following:

(1) Assume jurisdiction over this matter;

(2) Order that Ms. Guevara Peruano shall not be transferred outside the District of Massachusetts;

(3) Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days;

(4) Declare that Ms. Guevara Peruano detention is unlawful absent a bond hearing before an Immigration Judge;

(5) Issue a Writ of Habeas Corpus ordering Respondents to release Ms. Guevara Peruano immediately, or, in the alternative, provide Ms. Guevara Peruano with a bond hearing and order Ms. Guevara Peruano's release on conditions the Court deems just and proper;

(6) Order that Respondents shall not retaliate against Ms. Guevara Peruano in the bond hearing or otherwise for filing this habeas petition;

(7) Order that Respondents do not re-detain Ms. Guevara Peruano if he is released, unless they make an individualized showing of changed circumstances;

14

(8) Award Ms. Guevara Peruano attorney's fees and costs under the Equal Access to Justice

Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under law;

(9) Grant any further relief this Court deems just and proper.


Respectfully submitted,

*/s/ Julia Ciachurski*
Julia Ciachurski
BBO# 702059
PAIR Project
98 N. Washington Street, Suite 106
Boston, MA 02114
(617) 502-7448; dhargus@pairproject.org

*Pro bono counsel for Petitioner*

Dated:  January 23, 2026

## **VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I, Julia Ciachurski, declare as follows:

I am an attorney admitted to practice law in the Commonwealth of Massachusetts. Because many of the allegations of this Petition require a legal knowledge not possessed by Petitioners, I am making this verification on their behalf. I have read the foregoing Petition for Writ of Habeas Corpus and know the contents thereof to be true to my knowledge, information, or belief.

I certify under penalty of perjury that the foregoing is true and correct and that this declaration was executed on January 23, 2026.

*/s/ Julia Ciachurski*
Julia Ciachurski

16

## CERTIFICATE OF SERVICE

I, Julia Ciachurski, certify that on this 22nd day of January 2026, I caused a copy of the foregoing Petition to be served on Respondents' counsel via the CM/ECF platform.


*/s/ Julia Ciachurski*
Julia Ciachurski