UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| LAURA MARIA GUEVARA PERUANO, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Civil No. 26-10300-LTS |
| DAVID WESLING et al., | ) ) ) | |
| Respondents. | ) ) ) | |

ORDER

February 3, 2026

SOROKIN, J.

    The parties' joint status report filed Friday, January 30, 2026, Doc. No. 13, raises at least two issues that require resolution. This Order identifies those issues and the process by which the Court will determine the underlying factual disputes.

    First, the Court must determine whether it has jurisdiction to resolve conclusively the merits of the claims presented in the pending habeas petition.[1] If the Court does have such jurisdiction, then a question arises concerning the respondents' compliance with the order staying removal or transfer of the petitioner from this District ("the Stay Order"). Doc. No. 4. These related issues turn on the timing of the petitioner's departure from Massachusetts on

---

[1] The respondents "submit that this Court may retain jurisdiction over this matter" because they suggest "it appears Petitioner was either in flight or in transit at the time [she] filed her Petition." Doc. No. 13 at 1. The Court, however, has an independent duty to assess its jurisdiction. The respondents cannot confer subject-matter jurisdiction on a federal court via an equivocal assertion in their papers—especially after they previously urged that the Court lacked jurisdiction based on the same factual assertions.

January 23, 2026.  The petition was filed on January 23 at 12:29 PM, the Stay Order was docketed at 1:27 PM, and both items were emailed to counsel for the respondents by 1:32 PM.

The respondents have submitted a sworn declaration from Brian E. Sullivan, a Supervisory Detention and Deportation Officer at ICE's office in Burlington, Massachusetts. Doc. No. 10.  Sullivan attests: "Petitioner departed the Laurence F. Hanscom Field Airport in Bedford, Massachusetts on a flight at approximately 11:20 a.m. EST enroute to the Alexandria International Airport in Rapides Parish, Louisiana, where she arrived at approximately 3:00 p.m. EST" on January 23.  Id. ¶ 12.  The respondents have also supplied what they characterize as a "flight log" "excerpt" dated "Fri 01/23/2026 09:15" at the top, listing a domestic flight leaving (or at least scheduled to leave) Hanscom at "11:20" and arriving in Alexandria at "15:00" with a twenty-one-passenger capacity.[2]  Doc. No. 13 at 2; Doc. No. 13-1.  The excerpt contains multiple redactions, was submitted without any accompanying explanation or affidavit from a person with first-hand knowledge of its contents, and does not identify any passengers on the flight it purports to describe.

According to flight data submitted by the petitioner, the only plane tracked flying from Hanscom to Alexandria on January 23 took off at 2:12 PM—after the filing of the petition, and after the Stay Order was docketed.  Doc. No. 13-3 at 3.  Through counsel, the petitioner represents in her papers that the flight data in her exhibit is consistent with her recollection of the time her flight took off.  Doc. No. 13 at 3.

Because the Court's jurisdiction depends on the timing of this flight, which the Court cannot resolve on the present record, it is hereby ORDERED as follows.  The respondents shall

---

[2] The exhibit identifies Hanscom and Alexandria using three-letter airport codes (BED for Hanscom, and AEX for Alexandria).

disclose to the Court and to the petitioner's counsel: 1) a list of all flights carrying any ICE detainee(s) from Hanscom to Alexandria on January 23, 2026, including the time each flight was scheduled to depart and the time each flight actually departed; 2) all records pertaining to the petitioner's transfers by ICE (or any respondent) on January 23, including records documenting the time and manner of her departure from Burlington, the time of her arrival at Hanscom, the takeoff and landing times for the flight that carried her from Hansom to Alexandria, and a full passenger manifest for that flight; and 3) all records documenting ICE's receipt and/or notice of the Court's January 23 Stay Order and any efforts by ICE to comply therewith.  <u>The respondents shall make these submissions under seal, with copies produced to the petitioner's counsel, by noon on Friday, February 6, 2026.</u>[3]

In addition to reviewing the foregoing records, the Court will convene an in-person evidentiary hearing to resolve the fact disputes concerning the timing of the petitioner's movement on January 23.  <u>The hearing will occur on Tuesday, February 10, 2026, at 10 AM in Courtroom 13</u>.  The Court will hear testimony from Brian Sullivan, who shall attend the hearing, about the contents of his declaration.[4]  If either party wishes to present additional witnesses with knowledge of the foregoing events, they may do so provided they notify the Court and opposing counsel of any witness's identity by Monday, February 9, 2026.

---

[3] More than one deadline the Court has set in this case has been missed.  The Court expects the respondents to adhere to the deadlines set in this Order.  If issues arise beyond counsel's control that prevent such adherence, then the Court expects the respondents to submit a written request to extend the relevant deadline—in advance of its expiration—that describes why the deadline cannot be met and how much additional time is necessary.

[4] The petitioner may also attend the hearing in person.  If the petitioner will attend and requires an interpreter, her counsel shall notify the Deputy Clerk as soon as possible so that the Court may arrange for an interpreter to be present.

Second, the Court has serious concerns about the respondents' compliance with its electronic order issued on January 23, 2026, concerning the petitioner's medical needs. The petitioner suffers from severe epilepsy, and the respondents' failure to provide necessary medication and treatment for her condition was prominently alleged in the petition. Those allegations led the Court to issue, contemporaneously with its Stay Order, the following separate order ("the Medication Order"): "Pending resolution of this matter, the respondents shall ensure that the petitioner is provided with appropriate medical care, and she shall not be denied epilepsy medication in the absence of an evaluation by a licensed medical practitioner who concludes after the evaluation that such medication is not medically necessary." Doc. No. 5. The Medication Order was docketed at 1:28 PM on January 23, and it was emailed to counsel for the respondents minutes later along with the petition and the Stay Order. See Doc. No. 6.

During a zoom conference held on the afternoon of Tuesday, January 27, counsel for the respondents could not confirm whether the petitioner had been receiving her medication, as the respondents had not answered counsel's requests for information. Later that night, counsel filed a notice stating she had "been informed that Petitioner is currently 'receiving any and all medications prescribed' at the South Louisiana ICE Processing Center." Doc. No. 12 at 1.

In the January 30 status report, the petitioner (through counsel) painted a very different picture. The petitioner alleged she received prescribed medications for three medical conditions, as well as other accommodations for her epilepsy, for the duration of her detention by ICE in Maine. That is, she received all three medications at a consistent time each day. See Doc. No. 13 at 2–3. However, from the time she was removed from Maine on Thursday, January 22, until Tuesday, January 27, she received no medication at all. During that time, she had numerous seizures—one in Burlington (before the petition was filed) that was severe enough to require

4

medical intervention, and as many as five in a single day in Louisiana (after the Medication Order issued).  Id.  The petitioner further alleged that she received only one of her three medications (and her custodians refused to identify which one) on January 27 and January 28, and had received no medication at all by dinnertime on January 29.  She also asserted that her requests for other accommodations at the Louisiana facility—for example, a bottom bunk on the first floor, to minimize the risk of injury in the event of a seizure—were summarily denied.  Id.

These serious allegations led the Court to order the respondents to return the petitioner to Massachusetts and release her from their custody.  Doc. No. 14.  To further evaluate whether and, if so, to what extent the respondents violated the Medication Order—and what might follow—the Court requires further information.  To that end, the respondents are hereby ORDERED to disclose to the Court and to the petitioner's counsel: 1) all records showing or referring to any request by the petitioner for medication, medical treatment, or other accommodation of a medical condition between the time she was removed from the Cumberland County Jail in Maine and the time of her release by ICE; and 2) all records showing or referring to any medical treatment or accommodation of any kind provided to the petitioner between the time she was removed from the Cumberland County Jail and the time of her release by ICE.

In addition, the respondents shall secure and submit a sworn declaration from the ICE representative(s) whose statements are referenced in the January 27 status report, Doc. No. 12 at 1 (quoting statement conveyed to counsel regarding petitioner's medication in Louisiana), and the January 30 status report, Doc. No. 13 at 1 (describing information provided "by counsel for Immigration and Customs Enforcement").  The declaration shall identify the basis for the information conveyed to counsel and included in the two status reports filed with the Court, and

it shall be accompanied by copies of all records supporting or referring to the facts described in the declaration.

<u>The respondents shall make the foregoing submissions concerning the petitioner's medical care by noon on Friday, February 6, 2026</u>.  These, too, may be made under seal, with copies provided to counsel for the petitioner.  If the Court's review of the submissions regarding the petitioner's medical care causes it to expand the scope of the February 10 evidentiary hearing to address these matters as well, it will so notify the parties in advance of that proceeding.

                                            SO ORDERED.

                                            /s/ Leo T. Sorokin
                                         United States District Judge