UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LAURA MARIA GUEVARA PERUANO,<br><br>Petitioner<br><br>v.<br><br>WESLING, et al.<br><br>Respondents. | C.A. No. 26-cv-10300-LTS |

**OBJECTION TO PETITIONER'S APPLICATION FOR FEES AND COSTS PURSUANT TO THE EQUAL ACCESS TO JUSTICE ACT**

Following this Court's Memorandum and Order on Petition for Writ of Habeas Corpus dated May 20, 2026 (Doc. No. 43) (the "Memorandum"), Petitioner filed an Application for Fees and Costs Pursuant to the Equal Access to Justice Act ("EAJA") (Doc. No. 45).[1] EAJA provides that:

> a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any *civil action* (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was *substantially justified* or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added). Respondents recognize that this Court has already determined that Petitioner is a "prevailing party" and that Respondents were not "substantially justified." *See* Doc. No. 43, pp. 27-28. However, in its Memorandum, the Court indicated that Respondents "may advance, and the Court will consider, any challenge they wish to make to the

[1] Respondents recognize that this Court has already determined that a fee award is warranted in this case on two separate grounds: under the EAJA and as a sanction.

application of the EAJA in this case, including as to those issues the Court has addressed in this Memorandum." Doc. No. 20, p. 29. To that end, and to preserve their legal arguments on these issues, Respondents submit the following objection to an award of fees under EAJA.

**A. This Court should not award fees and costs under EAJA because habeas petitions do not fall within EAJA's waiver of sovereign immunity.**

This Court's jurisdiction to grant a fee award exists only if Congress has waived sovereign immunity for EAJA awards stemming from habeas actions. The "United States, as sovereign, is generally immune from suits seeking money damages." *Dep't of Agric. v. Kirtz*, 601 U.S. 42, 48 (2024). And only Congress can waive the United States' sovereign immunity. *Id.*

The Supreme Court has "said on many occasions that a waiver of sovereign immunity must be 'unequivocally expressed' in statutory text." *FAA v. Cooper*, 566 U.S. 284, 290 (2012) (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)). Thus, "a waiver of sovereign immunity must be 'unmistakably clear in the language of the statute.'" *Kirtz*, 601 U.S. at 49 (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 76 (2000)). Whether Congress has waived sovereign immunity "trains on statutory text rather than legislative history." *Id.*; *see also Cooper*, 566 U.S. at 290 ("Legislative history cannot supply a waiver that is not clearly evident from the language of the statute.").

"Any ambiguities in the statutory language are to be construed in favor of immunity, so that the Government's consent to be sued is never enlarged beyond what a fair reading of the text requires." *Cooper*, 566 U.S. at 290 (citations omitted). "Ambiguity exists if there is a plausible interpretation of the statute that would not authorize money damages against the Government." *Id.* at 290–91.

Here, EAJA waives sovereign immunity only for a limited set of claims, in that it applies only to "any civil action (other than cases sounding in tort)." 28 U.S.C. § 2412(d)(1)(A). And the term "civil action" is ambiguous as to whether it encompasses habeas petitions. The Supreme

Court has recognized that, even though habeas petitions are often categorized as civil for general purposes, "the label is gross and inexact." *Harris v. Nelson*, 394 U.S. 286, 293–94 (1969). Habeas proceedings are instead "unique." *Id.* at 294. Indeed, the problems presented in habeas proceedings "are materially different from those dealt with in the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure[.]" *Id.* at 300 n.7.

Accordingly, the Supreme Court has refused to construe the statutory phrase "civil action" as invariably encompassing habeas proceedings. *See Schlanger v. Seamans*, 401 U.S. 487, 490 n.4 (1971) ("Though habeas corpus is technically 'civil,' it is not automatically subject to all the rules governing ordinary civil actions."); *Stafford v. Briggs*, 444 U.S. 527, 542–43 (1980) (recognizing that *Schlanger* rejected an "overbroad interpretation" of "the phrase 'civil action'" that would have encompassed habeas proceedings); *Obando-Segura*, 999 F.3d at 196 (noting that the Supreme Court in *Schlanger* "found that a habeas proceeding seeking release from civil detention was not a 'civil action'").

Congress enacted EAJA 21 years after *Harris* and nine years after *Schlanger*. In passing EAJA, Congress adopted statutory language that used the same phrase—"civil action"—the Court had already held did *not* encompass habeas petitions. Given that courts "normally assume that, when Congress enacts statutes, it is aware of relevant judicial precedent," *Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010), Congress presumptively intended to adopt *Schlanger*'s construction of that term as excluding habeas petitions.[2]

[2] Admittedly, the Supreme Court's jurisprudence also has referred to habeas proceedings as civil. *See, e.g.*, *Banister v. Davis*, 590 U.S. 504, 507 (2020); *Browder v. Dir., Dep't of Corr. of Ill.*, 434 U.S. 257, 269 (1978).

Although the First Circuit has not addressed whether Congress waived sovereign immunity for EAJA awards stemming from habeas actions,[3] other circuit courts have held that EAJA does not apply to habeas actions. For example, the Fourth Circuit has concluded that EAJA does not apply to "habeas proceedings seeking release from civil detention." *Obando-Seguro*, 999 F.3d at 191. There, the court cited the Supreme Court's observation that "the civil label, as applied to applications seeking the writ of habeas corpus, is 'gross and inexact,' as habeas corpus proceedings are 'unique' and occupy a special place of their own in our system." *Id*. at 192–93 (quoting *Harris*, 394 U.S. at 293–94). Ultimately, the Fourth Circuit concluded that "the nature of habeas corpus proceedings makes it ambiguous as to whether habeas proceedings fall within" EAJA's reference to "any civil action." *Id*. at 193. And since courts "construe ambiguous waivers of sovereign immunity narrowly," the Fourth Circuit held that "any civil action" excludes habeas proceedings. *Id*.

The Fifth Circuit reached the same result, expressly agreeing with the Fourth Circuit. *See Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023). The Fifth Circuit explained that "[s]ince 'a habeas corpus proceeding is neither a wholly criminal nor a wholly civil action, but rather a hybrid action that is unique, a category unto itself[,]' it is not purely a civil action, and the EAJA does not authorize attorney's fees for successful 28 U.S.C. § 2241 motions." *Id.* (quoting *O'Brien v. Moore*, 395 F.3d 499, 505, (4th Cir. 2005)).

To the contrary, other sessions of this Court have held that EAJA does apply to habeas petitions. *See, e.g.*, Mem. & Order, *Ndongala v. Wesling*, 26-cv-10194-ADB (D. Mass. June 1, 2026), Doc. No. 15 at 3-4; Mem. & Order on Pet.'s Mot. for Attorney's Fees & Expenses Under

[3] To be sure, the First Circuit has considered (and denied) a claim for EAJA fees resulting from a habeas proceeding, but without addressing whether Congress waived sovereign immunity for such a claim in the first place. *See generally Saysana* v. *Gillen*, 614 F.3d 1 (1st Cir. 2010).

the Equal Access to Justice Act, *Orrego Orrego v. Hyde*, 26-cv-10260-BEM (D. Mass. May 27, 2026), Doc. No. 13 at 3-4.

Likewise, the Second Circuit has held that EAJA applies to habeas petitions, but it did so by resorting improperly to "the legislative history of EAJA" to resolve admitted "ambiguity of the term 'civil action[.]'" *See Vacchio v. Ashcroft*, 404 F.3d 663, 669 (2d Cir. 2005). By consulting the legislative history to resolve such ambiguity—rather than simply interpreting that ambiguity in favor of immunity—the Second Circuit's approach to the sovereign immunity analysis is incompatible with the Supreme Court's standard expressed in *Cooper* and *Kirtz*. The same is true of the Ninth Circuit's decision applying EAJA to habeas petitions. *See In re Hill*, 775 F.2d 1037, 1040–41 (9th Cir. 1985).

The Third and Tenth Circuits also held recently that EAJA applies to habeas petitions seeking release from immigration detention. *See Michelin v. Warden Moshannon Valley Correctional Ctr.*, 169 F.4th 418, 422 (3d Cir. 2026) (holding that "a petition for a writ of habeas corpus from immigration detention under § 2241 is an EAJA 'civil action'"); *Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (concluding that "habeas actions challenging immigration detention are unambiguously 'civil actions'" under EAJA). But those decisions relied largely on a determination that habeas actions historically were considered civil. *Michelin*, 169 F.4th at 426; *Daley*, 158 F.4th at 1159-61. To the contrary, this Court should "rel[y] on persuasive Supreme Court . . . precedent that enumerated why habeas proceedings are hybrid proceedings that are meaningfully different from civil actions." *Obando-Segura*, 999 F.3d at 195.

In short, the unique nature of habeas petitions makes them not unambiguously or unmistakably "civil actions" within the meaning of EAJA. Accordingly, EAJA's text cannot satisfy the Supreme Court's stringent test that "a waiver of sovereign immunity must be

'*unequivocally expressed*' in statutory text." *Cooper*, 566 U.S. at 290 (emphasis added). Sovereign immunity thus precludes an award under EAJA here.

**B. Respondents Were Substantially Justified In Litigating Mandatory Detention Under 8 U.S.C. § 1225**

To establish substantial justification, the government must show that its litigation position was "'justified to a degree that could satisfy a reasonable person.'" *Johnson v. Gonzalez*, 416 F.3d 205, 210 (3d Cir. 2005) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). It does not mean, for instance, "justified to a high degree." *Dantran, Inc. v. United States Department of Labor*, 246 F.3d 36, 42 (1st Cir. 2001) (quoting *Pierce*, 487 U.S. at 565). Rather, a court should ask "whether the government's position 'has a reasonable basis in law and fact,' or, stated another way, whether 'a reasonable person could think it correct.'" *Id*. at 40-41 (quoting *Pierce*, 487 U.S. at 566 n.2); *accord De Allende v. Baker*, 891 F.2d 7, 11-12 (1st Cir. 1989). Accordingly, a party can lose the litigation but nonetheless be substantially justified. *Dantran*, 246 F.3d at 41. In fact, its course of action could even constitute an abuse of discretion and still meet the standard. *Id*. at 43.

In the immigration context, the government must establish substantial justification twice—"once with regard to the underlying agency action and again with regard to its litigation position in the proceedings arising from that action." *Id.* Here, Respondents were substantially justified in both the underlying agency action—ICE detaining Petitioner without a bond hearing—and in their litigation position opposing Petitioner's habeas petition based on the Civil Division's obligation to defend the constitutionality of an Act of Congress.

Here, the government's position was not only substantially justified, but its position has been affirmed in numerous legal decisions and is supported by the statute. ICE maintains that it was substantially justified in detaining Petitioner without a bond hearing because Petitioner was

never lawfully admitted into the United States. Under § 1225(b)(2), an individual "who is an applicant for admission" shall be detained for a removal proceeding "if the examining immigration officer determines that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A); *see Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 ("The third category of applicants for admission . . . are those aliens who are seeking admission and who an immigration officer has determined are 'not clearly and beyond a doubt entitled to be admitted.' . . . [T]he INA requires that this third "catchall" category of applicants for admission be mandatorily detained for the duration of their immigration proceedings."); *Matter of Q. Li*, 29 I. & N. Dec. 66, 68 (BIA 2025) ("for aliens arriving in and seeking admission into the United States who are placed directly in full removal proceedings, section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), mandates detention 'until removal proceedings have concluded.'") (citing *Jennings*, 583 U.S. at 299); *Matter of M-S-*, 27 I&N Dec. 509 (A.G. 2009) (holding a noncitizen who is transferred from expedited removal proceedings to full removal proceedings after establishing a credible fear of persecution or torture is ineligible for release on bond).[4]

The Supreme Court has confirmed that this statutory mandate for detention extends for the entirety of removal proceedings. *Jennings*, 583 U.S. at 302 ("[Section] 1225(b)(2) . . . mandate[s] detention of aliens *throughout the completion of applicable proceedings* and not just until the moment those proceedings begin." (emphasis added)). Once in removal proceedings, an IJ "shall conduct proceedings for deciding the inadmissibility or deportability of an alien."

[4] Pursuant to regulation concerning the "scope of examination" for an applicant for admission, an "alien present in the United States who has not been admitted or paroled … is subject to the provisions of section 212(a) of the Act [8 U.S.C. § 1182] and to removal under section 235(b) [8 U.S.C. § 1225(b)] or 240 of the Act [8 U.S.C. § 1229a]." 8 C.F.R. § 235.1(f)(2).

8 U.S.C. § 1229a(a)(1). Such proceedings are the "sole and exclusive procedure for determining whether an alien may be admitted to the United States…". *Id.,* § 1229a(a)(3). The Department of Homeland Security ("DHS") has the sole discretionary authority to temporarily release on parole "any alien applying for admission to the United States" on a "case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see Biden v. Texas*, 597 U.S. 785, 806 (2022).

Respondents acknowledge that at the time of her detention, Petitioner was physically present and residing in the United States. However, based on the statutory definition of "admission", Respondents maintain that she had not been lawfully admitted into the United States.[5]

This reasoning has also been followed by other courts throughout the country. *See Romero v. Bondi*, No. 1:25-CV-993 (RDA/WEF), 2025 WL 2490659, at *2–3 (E.D. Va. July 2, 2025) ("Petitioner has never been 'admitted' to the United States, and thus cannot be detained under 8 U.S.C. § 1225(a)); *Maldonado v. Bostock*, No. 23-cv-00760, 2023 WL 5804021, at *3 (W.D. Wash. Aug. 8, 2023) (explaining that petitioner "appears to be an applicant for admission because he is a noncitizen 'present in the United States' and 'has not been admitted.'"); *Vargas Lopez v. Trump,* No. 8:25-cv-526, 2025 WL 2780351, at *9 (D. Neb. Sept. 30, 2025) (just because petitioner illegally remained in this country for years does not mean that he is suddenly not an "applicant for admission" under 8 U.S.C. §1225(b)(2)); *Chen v. Almodovar,* No. 25-cv-8350-MKV, 20256 WL 3484855, at ** 7-8 (S.D.N.Y. Dec. 4, 2025) (holding that an alien who entered the United States unlawfully is subject to mandatory detention under 8 U.S.C. § 1225(b) as it is clear from the

[5] The term "admission" is defined by the INA to mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

statute, and the historical background of the INA dealing with the issue of admissibility, that ICE may mandatorily detain such individuals). Notably, the District of Vermont recently denied EAJA fees in a case where the government claimed the alien was detained per 8 U.S.C. § 1225. *See Angie Maralene Gonzalez Lopez v. Trump, et. al*, 2:25-cv-00863-gwc, ECF No. 21 (D. Vt. Jan. 14, 2026); *but see Canel Ajbal v. Wesling*, 1:26-cv-10190- LTS, ECF No. 27 (D. Mass. March 27, 2026).

Finally, the Fifth Circuit and the Eighth Circuits recently decided the issue of which statutory provision applies to "applicants for admission" who bring habeas actions to challenge their detention without a bond hearing. *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026); *see also Avila v. Bondi*, No. 25-3248, 2026 WL 819258 (8th Cir. Mar. 25, 2026). The Fifth Circuit held that aliens who were "applicants for admission" to the United States who were "seeking admission" are subject to the Immigration and Nationality Act's mandatory provision in 8 U.S.C. § 1225(b)(2) and that the government's longstanding practice of applying INA's discretionary detention provision to noncitizens who were present in the United States without having been admitted did not preclude finding that INA's mandatory detention provision applied to such noncitizens. *Id*. at *6-8. Similarly, the Eighth Circuit held that being "admitted," for purposes of mandatory detention under the Immigration and Nationality Act provision applying to an "applicant for admission" who is "seeking admission" but not "clearly and beyond a doubt entitled to be admitted," does not merely mean being present in the United States; under immigration law, it signifies having made a lawful entry into the country. *Avila v. Bondi*, No. 25-3248, 2026 WL 819258, at *2 (8th Cir. Mar. 25, 2026). The Eighth Circuit also agreed with the government's reading of the statute and found that the authority granted by Congress is not confined by the government's enforcement of the statute at hand. *Id.* at *4-5. Although not binding on this Court, this decision agreeing with the premise of Respondents'

arguments in this case and other similarly situated cases, further demonstrates that Respondents' position was substantially justified.

At bottom, it was reasonable for Respondents to detain Petitioner as, based on the statutory language at play in this case, and the underlying facts herein, she is an applicant for admission as defined by Section 1225 and will remain as such until the conclusion of her removal proceedings, where an IJ is charged with "determining whether an alien may be admitted to the United States". 8 U.S.C. § 1229a(a)(3). *Romero*, 2025 WL 2490659, at *3 (Explaining that petitioner "provides no evidence that his release on bond conferred any legal status itself" and that because petitioner "has never been admitted to the United States, [he] thus cannot be detained under 8 U.S.C. § 1226(a)."). As the BIA explained in *Matter of Yajure Hurtado*, "being arrested pursuant to a warrant and placed into removal proceedings does not constitute an admission." 29 I&N Dec. at 228. As an alien present in the United States who has not been admitted under the INA, Petitioner squarely fit within Section 1225's definition of "applicant for admission" and was subject to mandatory detention.

There is therefore a substantial body of case law, both in BIA precedent and in the federal district courts supporting the government's legal position. As can be gleaned from the legal precedent referenced above, the issue of whether a noncitizen detained under 1225(b) is entitled to a bond hearing under 8 U.S.C. § 1226 is hotly debated, with courts throughout this country issuing conflicting decisions. [6] That being said, "[W]hile the EAJA redresses governmental abuse, it was never intended to chill the government's right to litigate or to subject the public fisc to added

---

[6] For example, the Second Circuit recently found that Section 1226(a) governs the detention of noncitizens present in the United States after entering the country without inspection and admission. *See Barbosa da Cunha v. Freden*, 175 F.4th 61, 69 (2d Cir. 2026).

risk of loss when the government chooses to litigate reasonably substantiated positions, whether or not the position later turns out to be wrong." *Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 139 (4th Cir. 1993). The government is justified in litigating an issue in which several courts have affirmed its position, even if it is a minority position. In short, ICE is properly detaining noncitizens who have unlawfully entered the country and is appropriately following the statutory mandate passed by Congress in this context. Accordingly, ICE's decision to detain Petitioner without a bond hearing was substantially justified and Petitioner is thus not eligible for fees under the EAJA.

**C. Any Award Of EAJA Fees Is Premature**

Finally, Respondents submit that any award of EAJA fees at this juncture is premature because final judgment has not entered. As the Supreme Court explained in *Melkonyan v. Sullivan*, "a 'final judgment' for purposes of 28 U.S.C. § 2412(d)(1)(B) means a judgment rendered by a court that terminates the civil action for which EAJA fees may be received." 501 U.S. 89, 91 (1991) ("Subsection (d)(1)(B) explains what the prevailing party must do to secure the fee award."). Here, the Court has not yet entered judgment and, in turn, the sixty-day time period for Respondents to file an appeal has not yet expired. *See Shalala v. Schaefer*, 509 U.S. 292, 302–03 (1993) (explaining that "the time for appeal does not end until 60 days after 'entry of judgment,' and that a judgment is considered entered for purposes of the rule only if it has been 'entered in compliance with Rule 58 … of the Federal Rules of Civil Procedure."). Until the above occurs, the Court's judgment remains "appealable" and is not a "final judgment" for purposes of the EAJA and Petitioner is not yet a prevailing party. *See* 28 U.S.C. § 2412(d)(2)(G).

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: *<u>/s/ Nicole M. O'Connor</u>*

Nicole M. O'Connor
Assistant United States Attorney
United States Attorney's Office
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3112

Date: June 3, 2026

**<u>CERTIFICATE OF SERVICE</u>**

I, Nicole M. O'Connor, Assistant U.S. Attorney, hereby certify that I served a true copy of the above document upon all parties of record via this court's electronic filing system.

Date: June 3, 2026

*<u>/s/ Nicole M. O'Connor</u>*
Nicole M. O'Connor
Assistant U.S. Attorney